Ardel WOLFF, Individually and as Trustee for the North Dakota Workmen's Compensation Bureau, Plaintiffs and Appellants,

v.

Dudly LIGHT, Defendant and Respondent.

No. 8359.

Supreme Court of North Dakota.

Feb. 9, 1968.

Mackenzie & Jungroth, Jamestown, for plaintiffs and appellants.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for defendant and respondent.

KNUDSON, Judge (on reassignment).

The defendant stopped at the "94 Gas Station and Cafe" at Jamestown, North Dakota, to have his automobile serviced. He placed a book on the accelerator to keep the engine running. While the automobile was being serviced he and his family went into the cafe. Later he came out of the cafe to drive the automobile to the front of the cafe to pick up his family. In doing so the defendant drove the automobile into the plate glass window of the cafe. He said the accelerator stuck and he was unable to dislodge it with his foot. Although he applied the brakes, the automobile crept forward, striking the cafe window and shattering the plate glass.

The Jamestown Police Department, upon being notified of the accident, called the plaintiff, a police officer on duty, to investigate the accident. The plaintiff drove his squad car to the "94 Gas Station and Cafe." As he went in to the cafe he observed the broken plate glass window and saw broken glass on the floor and near the stools and counter. There were several people in the cafe. The window was adjacent to the entrance and that part visible from the inside of the cafe was approximately five feet wide and four feet high. The plaintiff saw a jagged piece of glass hanging down from the top of the window. Plaintiff attempted to remove this piece of glass by pushing it outward. However, there was a section of plate glass covered by a plywood panel two or three feet in depth at the top of the window, which panel had the appearance of being a part of the wall. This section of plate glass was hidden from view from the inside of the cafe. The plaintiff, in pushing out the piece of glass, loosened the section of glass behind the plywood panel and it fell, almost severing his right wrist.

The plaintiff brought this action on behalf of himself and the North Dakota Workmen's

Compensation Bureau, from which he had received compensation for his injury under the Workmen's Compensation Act, against the defendant, alleging negligence on the part of the defendant as the proximate cause of his injuries. The defendant answered, denying his negligence, and further alleging that the complaint failed to state a cause of action and pleading the affirmative defense of contributory negligence.

The defendant moved for a summary judgment of dismissal of the action under Rule 56, North Dakota Rules of Civil Procedure, upon the pleadings and on the deposition of the plaintiff taken by the defendant. The plaintiff filed a written interrogatory of the defendant in resistance to the motion. There was before the court the pleadings, deposition, and interrogatory.

The district court granted the defendant's motion for summary judgment of dismissal, and from this judgment the plaintiff has appealed.

We will first consider whether this was a proper case for the entry of summary judgment.

■ Under N.D.R.Civ.P. Rule 56(c) the moving party is entitled to summary judgment if it appears that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Titus v. Titus, 154 N.W.2d 391 (N.D.1967); Verry v. Trenbeath, 148 N.W. 2d 567 (N.D.1967); Lang v. General Motors Corporation, 136 N.W.2d 805 (N.D.1965); Fire Ass'n of Philadelphia v. Vantine Paint & Gl. Co. of Bismarck, 133 N.W.2d 426 (N.D.1965); Mondy v. Gjesdal, 123 N.W.2d 33 (N.D.1963); Heasley v. State, 115 N.W.2d 334 (N.D.1962).

A motion for summary judgment should be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." N.D.R.Civ.P. Rule 56(c).

Although the motions for summary judgment and for directed verdict are similar in that they are both made on the grounds that there is no genuine issue of material fact to be determined, and that on the law applicable the movant is entitled to judgment, there is a distinct difference in the handling of the motions by the court. The harshness of the motion for a directed verdict has been largely remedied in the Federal Courts by Fed.R.Civ.P. 50(b) which provides for an automatic reservation of decision on the motion for a directed verdict which permits a verdict to be taken and decision on the motion subsequently to be made.

The text writer discusses this matter in 6 Moore's Federal Practice (2nd ed.) at § 56.02 [10], on page 2045, wherein he says:

The delay and waste that result from improper handling by the district court of the motion for summary judgment bears a certain resemblance to the delay and waste that formerly resulted from the improper handling of the motion for directed verdict, although this latter matter has been largely remedied by Rule 50 (b). Live trials before the trier of the facts, who can observe the demeanor of the witnesses as they testify on both direct and cross-examination, should be had where there is any reasonable doubt as to the facts. And it is a perversion of justice if tremendous time and energy must be spent by a party resisting a motion for summary judgment either to convince the district court that the motion should be denied, or, where the district court has granted the motion, in obtaining a reversal. Here the time and effort have been spent only for the purpose of getting to trial.

Where the defendant's motion for directed verdict is sustained at the end of plaintiff's case the judge has at least heard testimony at a live trial, but if the trial court improperly sustains the motion reversal follows with its attendant delay and expense. Much the same com-

ment applies where a verdict is actually directed at the close of the entire case. To remedy this evil, Rule 50(b) provides for an automatic reservation of decision on the motion for directed verdict made at the close of the entire case, which permits a verdict to be taken and decision on the motion subsequently to be made. But if the trial court errs in deciding this motion the appellate court need not remand for a new trial, if the provisions of Rule 50(b) have been properly followed in the district court.

The directed verdict technique has, therefore, been moulded so that a legal decision by the trial court can be obtained with a minimum of judicial waste. The summary judgment procedure on the other hand is productive of grave injustice or waste, or both, where judgment is improvidently granted. An improvident denial does not result in the delay and expense of an appeal although, of course, it usually means the waste that attends a needless trial.

Our Rules 50(a) and (b), relating to motions for directed verdict and judgment notwithstanding the verdict, are similar in context to the Federal Rule 50(b) and the discussion above is applicable to our rules.

■ In cases involving issues of negligence, contributory negligence, assumption of risk and proximate cause, where the standard of the reasonable man must be applied to conflicting testimony, and even where there is no dispute as to the facts, where inferences may be reasonably drawn from the evidence that indicate the presence of a genuine issue of fact, summary judgment should not be granted, but these issues should be tried in the usual manner.

Generally, issues of negligence, including such related issues as wanton or contributory negligence, are ordinarily not susceptible of summary adjudication either for or against the defendant, but should be resolved by trial in the ordinary manner. 6 Moore's Federal Practice, § 56.17(42), p. 2583.

Summary judgment will not usually be as feasible in negligence cases, where the standard of the reasonable man must be applied to conflicting testimony, as it is in other kinds of litigation. 3 Barron & Holtzoff, Federal Practice and Procedure (rules ed.), § 1232.1, p. 106.

■ *Even where there is no dispute as to the facts, it is, however, usually for the jury to say whether the conduct in question met the standard of the reasonable man.* Accordingly, motions for summary judgment where such issues were involved have usually been denied. Idem, p. 110; Miller v. Miller, 373 Mich. 519, 129 N.W. 2d 885 (1964).

Issues of negligence, contributory negligence and proximate cause are ordinarily to be tried by the jury or the court in the usual manner, and such issues should not be determined in summary judgment proceedings. Titus v. Titus, 154 N.W.2d 391 (N. D.1967); Miller v. Miller, supra.

■ Under N.D.R.Civ.P. Rule 56 the movant for summary judgment has the burden of showing that there is no genuine issue of material fact and the party opposing the motion will be given all favorable inferences which may reasonably be drawn from the evidence.

One who moves for a summary judgment has the burden of demonstrating clearly that there is no genuine issue of fact. That is a requirement of our rule. The evidence presented at a hearing on such a motion must be construed in favor of the party opposing the motion and he must be given the benefit of all favorable inferences which may be reasonably drawn from the evidence that indicate the presence of a genuine issue of fact. Federal Practice and Procedure, Rules Edition, Barron and Holtzoff, Section 1235.

Temme v. Traxel, 102 N.W.2d 1 (N.D. 1960), 4.

He who moves for summary judgment under N.D.R.Civ.P. Rule 56 has the burden

of establishing clearly that there is no genuine issue of fact and the opposing party has the benefit of that view of the evidence most favorable to him. Mondy v. Gjesdal, supra.

Under N.D.R.Civ.P. Rule 56(c) a motion for summary judgment will be granted only if after taking the view of the evidence most favorable to the party against whom a summary judgment is sought it appears that there is no genuine issue as to any material fact and that the party seeking the judgment is entitled to it as a matter of law.

Feather v. Krause, 91 N.W.2d 1 (N.D. 1958).

Since all *factual inferences must be drawn against the movant for summary judgment,* it follows that, even where the movant's *supporting documents are uncontradicted, they may in themselves be insufficient to sustain his burden of proof.* [emphasis added]

Sauter v. Sauter, 244 Minn. 482, 70 N. W.2d 351 (1955), Syllabus 2.

Upon examining the facts from the record presented to us, and applying the foregoing rules·thereto, we conclude that the trial court·erred in granting the motion for summary judgment. We find that the movant has not clearly sustained his burden of showing that there is no genuine issue as to any material fact within the meaning of Rule 56(c). The action of the plaintiff, upon observing the jagged piece of glass hanging down from what appeared to him to be the top of the window, of attempting to remove the glass by grasping the bottom of the glass and applying pressure to push it outside the cafe, presumably to prevent the glass from causing injury to the people in the cafe and to others who might come in close proximity to the jagged piece of glass, presents a question of fact as to whether the plaintiff exercised ordinary care. The window, in fact, was larger than was visible and extended upward about two or three feet behind the plywood false wall, where there was a section of glass

above the exposed portion of the window. A question of fact arises whether the physical appearance of the window would lead one to believe that the window was other than what was visible.

■ Upon the evidence presented in this case reasonable men could differ on the question of whether the plaintiff acted in a reasonable manner in attempting to remove the jagged piece of glass. Since there was a genuine issue of material fact to decide, it was error to enter summary judgment for the defendant.

We said in Larson v. Farmers' Elevator Co. of Dwight, 63 N.D. 396, 249 N.W. 116, 118:

The trapdoor was closed when he drove into the elevator with the load involved in this controversy. After he had removed the end gate, he stepped back and stood on the trapdoor and watched the grain running out of the grain box. The trapdoor, therefore, must have been opened * * * after the main part of the load had been unloaded. In these circumstances, it cannot be said as a matter of law that the plaintiff was guilty of contributory negligence in stepping out of the grain box without looking to see whether the trapdoor had been opened. Negligence and contributory negligence are primarily questions for the jury. They become questions of law only when the facts are such that reasonable men, in the exercise. of reason and judgment, can draw only one conclusion therefrom. We are agreed that in this case it cannot be said that the only conclusion that reasonably, could be drawn is that the plaintiff was guilty of negligence, but that, on the contrary, the situation presented here is one where intelligent men, in the exercise of reason and judgment, may come to different conclusions, and that, consequently, it was proper to submit to the jury the questions of negligence and contributory negligence, and that the decision of the jurors fairly made upon these questions is binding upon this court.

The defendant argues that the negligence of the defendant, if any, in striking the plate glass window and breaking it, furnished but a mere static condition, and the proximate intervening cause was the plaintiff's own negligence in removing the glass. The defendant argues that he had created a condition harmless in itself unless acted upon by other forces for which the defendant was not responsible. He argued the connection of cause and effect was clearly severed by the plaintiff's actions. The defendant also argued that the defendant could not have foreseen that as a result of his striking and breaking the glass an investigating police officer would gratuitously and negligently attempt to remove a large piece of glass remaining in the window under circumstances presenting no emergency.

In order to relieve the defendant of responsibility for the consequences of his negligence, the intervening cause must be one that severs the connection of cause and effect between the negligent act and the injury.

In Chicago, M., St. P. & P. R. Co. v. Johnston's Fuel Liners, Inc., 122 N.W.2d 140, at page 148 (N.D.1963), although the facts are not the same, this court quoted with approval the following from C.J.S.:

> "An intervening efficient cause which relieves a negligent wrongdoer of liability is, and must be, a new and independent force which breaks the causal connection between the original wrong and injury, and which itself becomes the direct and immediate cause of the injury. It must be more than a mere concurrent and contributing cause; it must be a responsible cause or a superseding cause, that is, one which has superseded the original act or been itself responsible for the injury. * * *" 65 C.J.S. Negligence § 111, pp. 688–690.

In Vick v. Fanning, 129 N.W.2d 268 (N.D.1964), the plaintiff was furnished by his employer, the defendant, a truck with a defective hydraulic hoist to raise and lower the grain box. The defendant demonstrated to the plaintiff an unsafe way of operating the hoist and suggested the plaintiff use this method if the hoist failed to work properly. The plaintiff was injured in attempting to follow the defendant's suggestion on how to operate the hoist. The jury returned a verdict for the plaintiff, and judgment was entered. The defendant appealed from the order denying his motion for judgment notwithstanding the verdict.

The defendant urged, upon the question of proximate cause, that the conduct of the plaintiff, himself, after the hoist failed to work, was the intervening, sole and proximate cause of his injury. The defendant argued that the only negligence, if any, on his part was that he furnished the plaintiff a truck with a defective hoist mechanism, and that the defective hoist did not cause the injury.

This court said, in finding that the chain of causation of the negligent act of the defendant and the plaintiff's injury was so clear that the jury could hardly have found otherwise than it did that the defendant's negligence was the proximate cause of the plaintiff's injuries:

> In order for a negligent defendant to be exonerated by an intervening cause, the claimed intervening cause must be one that severs the connection of cause and effect between the negligent act and the injury. Boss v. Northern Pacific R. Co., 2 N.D. 128, 49 N.W. 655; Emmerich v. Kansas City Public Service Co., 177 Kan. 443, 280 P.2d 615; Ricker v. Danner, 159 Neb. 675, 68 N.W.2d 338; Kingsland v. Erie County Agr. Soc., 298 N.Y. 409, 84 N.E.2d 38, 10 A.L.R.2d 1; Magnolia Petroleum Co. v. Barnes, 198 Okl. 406, 179 P.2d 132. One test of whether there was a continuous succession of events leading proximately from negligence to injury is whether the act of the injured party was a normal response to the stimulus of a dangerous situation created by

such negligence. New York, C. & St. L. R. Co. v. Affolder, 8 Cir., 174 F.2d 486.

Vick v. Fanning, 129 N.W.2d 268, 271.

In Bilyeu v. Standard Freight Lines, 182 Cal.App.2d 536, 6 Cal.Rptr. 65 (Cal. 1960), the defendant's driver of a tractor-trailer combination negligently upset the trailer so that three steel rolls fell on the highway. Bilyeu was injured in assisting in rolling the rolls off the highway, as it was considered that the rolls constituted a traffic hazard. From a judgment for the plaintiff the defendants appealed, contending that the truck driver's negligence was not a proximate cause of plaintiff's injuries because the latter's conduct was an efficient intervening cause.

In sustaining the judgment the court said:

The test of foreseeability is applied to determine the legal effect of an intervening act on the chain of causation.

"Where the intervening act is reasonably foreseeable, the chain of causation is not broken, and the original actor remains liable." Eads v. Marks, 39 Cal.2d 807, 812, 249 P.2d 257, 260; Mosley v. Arden Farms Company, 26 Cal.2d 213, 218, 157 P.2d 372, 158 A.L.R. 872; Stasulat v. Pacific Gas & Electric Co., 8 Cal.2d 631, 637, 67 P.2d 678.

The fact that the person injured, rather than a third person, motivates the intervening act does not make it an efficient intervening cause. Haverstick v. Southern Pac. Co., 1 Cal.App.2d 605, 611, 37 P.2d 146.

In our opinion, the fact that a Highway Patrol officer might participate in and be injured while removing an obstruction from a highway is a foreseeable occurrence. * * * We conclude that the plaintiff's participation in removing the steel rolls from the highway was not an efficient intervening cause sufficient to break the legal chain of causation be-tween the negligent conduct of the driver and the plaintiff's injuries.

* * * The likelihood of injury from negligent conduct causing an obstruction in the highway, either while the obstruction remains in the highway or in the course of its removal, if not self-evident, is properly determined as a question of fact. In the event of an intervening act, and its effect as an efficient intervening cause is in issue, when there is room for a reasonable difference of opinion as to whether the intervening act was foreseeable, the question should be left to the trier of fact. Richards v. Stanley, 43 Cal.2d 60, 66, 271 P.2d 23; McEvoy v. American Pool Corp., 32 Cal.2d 295, 299, 195 P.2d 783; Mosley v. Arden Farms Co., 26 Cal.2d 213, 219, 157 P.2d 372, 158 A.L.R. 872.

Bilyeu v. Standard Freight Lines, 182 Cal.App.2d 536, 6 Cal.Rptr. 65, 68–69.

And in Colorado Mortg. & Inv. Co. v. Rees, 21 Colo. 435, 42 P. 42, where the owner of a passenger elevator failed to maintain a sufficient lock on the door, so that it opened in the absence of the elevator, and a person walked into the shaft and was injured, and the court held that whether or not the injurious consequences that resulted from such owner's negligence was such as ought reasonably to have been foreseen, was for the jury, the court said, at page 46:

Whether or not the injurious consequences that did result from their negligence in this case were such as they ought reasonably to have foreseen was a question of fact * * *. Whether in any given case, the act charged was negligent, and whether the injury suffered was, within the relation of cause and effect, legally attributable to it, are questions for the jury.

We reach the conclusion in the instant case that the question whether the conduct of the plaintiff was a sufficient intervening cause, as a new and independent force, to

break the chain of causation between the negligence of the defendant and the plaintiff's injuries, should be left to the jury to determine.

Whether the defendant should have foreseen the probable consequences of his negligent act in breaking the window and leaving the jagged piece of glass, and failed to exercise due care to prevent foreseeable injuries that may result therefrom is for the determination of a jury.

The plaintiff was a peace officer acting in the course of his duties, he was requested to come to the cafe to investigate the accident, there were other people in the cafe, the entrance to the cafe was near the broken window, there was glass on the floor of the cafe near the stools and counter, and the presence of the jagged piece of glass hanging from the top of the window may have presented a danger to the patrons of the cafe. A jury might find that the subsequent events confirmed the officer's concern as to the danger of the hanging, jagged piece of glass to the other people in the cafe, and others, any one of whom, by coming within the close proximity of the window, may be injured by falling glass.

We believe that on the facts in this case, it is for the jury to determine whether the negligence of the defendant was the proximate cause of the plaintiff's injuries and to determine whether the conduct of the plaintiff constituted contributory negligence.

The judgment is reversed and the case remanded for trial in the district court.

ERICKSTAD and PAULSON, JJ., concur.

TEIGEN, Chief Justice (dissenting).

I dissent. The defendant has moved for summary judgment and has the burden of demonstrating clearly that there is no genuine issue of fact. The evidence presented must be construed in favor of the party opposing the motion. The plaintiff must be given the benefit of all favorable inferences which can reasonably be drawn from the deposition and the interrogatories that indicate the presence of genuine issues of fact. Mondy v. Gjesdal, N.D., 123 N.W.2d 33; Temme v. Traxel, N.D., 102 N.W.2d 1; Feather v. Krause, N.D., 91 N.W.2d 1. I find he has sustained the burden placed upon him.

The facts presented in this case are not in conflict. The deposition and the interrogatories supplied establish that there is no genuine issue as to any material fact between the parties. In that situation, if the defendant is entitled to a judgment as a matter of law, it is a proper case for the application of the rule governing summary judgment. Rule 56, N.D.R.Civ.P., extends to a party against whom a claim is asserted the authority to move for a summary judgment in his favor upon all or any part thereof at any time after the expiration of twenty days from the commencement of the action or after service of a motion for summary judgment by the adverse party.

Rule 56(c) provides:

Judgment shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any *show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.* * * * (emphasis added)

The purpose of Rule 56 is to afford procedure for the just, speedy, and inexpensive disposition of actions in which there is no genuine issue as to any material fact, and the moving party is entitled to a judgment as a matter of law. Mondy v. Gjesdal, supra.

The defendant has pleaded the affirmative defense of contributory negligence,

which, if found to exist as a matter of law, is an absolute bar to recovery in this state. Where the plaintiff's own negligence contributes to the injury which he sustains, he is not entitled to recover therefor. Renner v. Murray, N.D., 136 N.W.2d 794; Wolf v. Northern Tank Lines, Inc., N.D., 113 N.W.2d 675; Moe v. Kettwig, N.D., 68 N.W.2d 853; Bagg v. Otter Tail Power Co., 70 N.D. 704, 297 N.W. 774; Engen v. Skeels, 60 N.D. 652, 236 N.W. 240; Sherlock v. Minneapolis, St. P. & S. S. M. R. Co., 24 N.D. 40, 138 N.W. 976.

The questions of negligence, contributory negligence, and proximate cause are ordinarily questions of fact for the jury, unless the evidence is such that reasonable men can draw but one conclusion therefrom. Grenz v. Werre, N.D., 129 N.W.2d 681; Mondy v. Gjesdal, supra; Erdahl v. Hegg, N.D., 98 N.W.2d 217; Goulet v. O'Keeffe, N.D., 83 N.W.2d 889.

But when the facts and circumstances are such that only one inference can fairly and reasonably be drawn therefrom with respect to either the negligence of the defendant or the contributory negligence of the plaintiff, the matter becomes a question of law for the court, and this is true irrespective of a jury's verdict. Schnell v. Northern Pac. R. Co., 71 N.D. 369, 1 N.W. 2d 56; Stelter v. Northern Pac. R. Co., 71 N.D. 214, 299 N.W. 310; Logan v. Schjeldahl, 66 N.D. 152, 262 N.W. 463; Bratvold v. Lalum, 68 N.D. 534, 282 N.W. 514.

Therefore, under summary judgment procedure it is proper to expedite disposal of the action by a dismissal if contributory negligence is established as a matter of law.

The fact that the plaintiff was an on-duty police officer does not absolve him from acting as an ordinarily prudent man under the same or similar circumstances. I realize that a police officer may be called upon to perform hazardous work as a part of his duty, but there is no reason why he should not use the same ordinary prudent care for his own safety as is required of any other

citizen. Brunner v. Yellow Cab Company, 13 Ill.App.2d 255, 141 N.E.2d 658; Sherrod v. Saunders, 106 Cal.App.2d 160, 234 P.2d 693; 65A C.J.S. Negligence § 126 (1966).

Police officers are not put in a special class because of their position. This is indicated by their being generally classified as licensees upon entering a person's property, and therefore they are in no better position than the average person. See cases cited in 86 A.L.R.2d 1221; 13 A.L.R. 651. Although the plaintiff was a police officer and in the process of investigating an accident, there is nothing in this record to indicate, and no authority has been pointed out nor found in any of my research, that it became the duty of the policeman to remove the glass from the window. His duty was to investigate an accident, to gather the facts, and, if appropriate, to make an arrest. In my opinion, when he attempted to remove the glass, he became a volunteer.

The plaintiff argues that an emergency situation existed, that in such case a police officer had the duty to alleviate the emergency, and that therefore he should not be held to the same degree of care as an ordinary person. However, this is not the case. The facts clearly show that everything was in a static condition and no emergency existed. No one's life or property was in imminent danger. The plaintiff had time in which to deliberate and to exercise good judgment as to all circumstances confronting him. He volunteered an overt act when he grasped the broken glass and applied force in attempting to remove it. The action taken by the plaintiff disturbed the status quo of what was then a static condition, which under the circumstances was negligence and was legally a contributing cause cooperating with the previous act of the defendant in bringing about the plaintiff's injury.

In my opinion there was no question of fact for the jury to decide. The plaintiff knew or ought to have known there was danger in removing the glass. He grasped

the broken glass and applied pressure, moving it back and forth to maneuver it so it would drop outside the cafe. His choice involved a hazard which no ordinarily prudent person would have assumed under similar circumstances. One cannot shield himself behind an emergency created by his own negligence. Bolton v. Wells, 58 N.D. 286, 225 N.W. 791. Attempting to break out a piece of plate glass hanging from the top of a window frame is dangerous without the use of proper methods and implements. This is known to every person, and no prudent person would attempt to remove it in the manner employed by this plaintiff. I feel he assumed the risk incident to the danger which confronted him. It was a position which he voluntarily took and which he alone controlled. He should not be permitted to shift the responsibility and the result which followed to the defendant. In my opinion he was contributorily negligent as a matter of law, which is a complete bar to recovery. For these reasons I would affirm the summary judgment of dismissal of the plaintiff's action.

STRUTZ, Justice (dissenting).

I join in the very able dissent of Judge Teigen. In addition to what Judge Teigen says, however, I would point out that the defendant's alleged negligence was not the proximate cause of the injuries suffered by the plaintiff. The plaintiff's own act was an intervening cause of the injuries of which he complains. Let us assume, for the purpose of argument, that the defendant's conduct did amount to negligence. Was that conduct the proximate cause of the plaintiff's injuries? I think not. Defendant's alleged negligence, at best, created a static condition which would not have harmed the plaintiff. It was the plaintiff's own rash act of attempting to remove the broken glass long after the accident had occurred that was in fact the cause of plaintiff's injuries. Plaintiff's own act was an intervening cause. As we said in Severinson v. Nerby (N.D.), 105 N.W.2d 252, legal responsibility must be limited to those causes which are so closely connected with the result that the law is justified in imposing liability.